**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACYE BENARD WASHINGTON,<br><br>    Plaintiff,<br><br>  v.<br><br>E. STARK, et.al.,<br><br>    Defendants. | Case No.: 1:18-cv-00564-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' EXHAUSTION MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 37] |

Plaintiff Tracye Benard Washington is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed January 4, 2019.

**I.**

**BACKGROUND**

This action proceeds on Plaintiff's first amended complaint against Defendant Rocha for excessive force and against Defendant Hicks for excessive force and failure to intervene in violation of the Eighth Amendment.

Defendants filed an answer to the complaint on October 5, 2018. On October 9, 2018, the Court issued the discovery and scheduling order.

As previously stated, on January 4, 2019, Defendants filed an exhaustion-related motion for summary judgment. Plaintiff filed an opposition on January 22, 2019, and Defendants filed a reply on January 24, 2019. Therefore, the motion is deemed submitted for review, without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S.Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///

///

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

### III.

### DISCUSSION

### A. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners

are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for non-medical appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b). The California Code of Regulations also requires the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

**B.    Summary of Allegations Underlying Plaintiff's Constitutional Claims**

On February 4, 2018, Plaintiff was transferred from the Richard J. Donovan Correctional Facility in San Diego, California, to Kern Valley State Prison in Delano, California to be housed in the mental health treatment and care division.

Plaintiff discovered that he was going to be housed in protective custody or "sensitive needs" instead of the general population. Over the next twenty-four hours, Plaintiff made numerous requests of custody staff to be taken off the protective custody list because his life was endangered, but staff refused to move him. After breaking several windows in his cell and overcoming staff's attempt to have Plaintiff's cellmate attack him, Plaintiff was taken to the administrative segregation unit on February 4, 2018.

However, Plaintiff was brought back to the facility on the evening of February 5, 2018. At approximately 10:00 p.m., Plaintiff was placed in restraints and removed from the cell. Plaintiff was escorted to the housing unit rotunda area where several correctional officers, including Defendants Hicks were standing. Sergeant Hicks ordered Plaintiff to the triage treatment area ("TTA"). Plaintiff

was secured in handcuffs with a chain that wraps around his waist due to Plaintiff's mobility impairment.

Hicks followed Plaintiff and the escorting officers out of unit C-8 to the TTA. Plaintiff was examined by a female nurse who cleaned the cut on his left wrist and took his vitals. The nurse then stated, "I'm going to place you on suicide watch tonight but in the morning a clinician is going to come and interview you and take you off suicide watch and return you to your housing unit." Plaintiff was then told he would be placed in an "out-patient" housing ("OHU") unit cell on the same facility.

As Plaintiff was preparing to exist the TTA, a black male in civilian clothing carrying a backpack and laptop computer and a certified nursing assistance ("CNA") followed him to monitor Plaintiff on suicide watch.

When Plaintiff reached his assigned cell, he was instructed to leave his walker outside the cell. Plaintiff stood at the cell door with his back to the door as a guard opened the food port to unlock the pad lock to the chains around Plaintiff's waist. When the lock was removed, Plaintiff walked over to the bed and sat down on the bottom bunk. Plaintiff refused to go back to the door stating he wanted to see a psychiatrist.

Hicks appeared at Plaintiff's cell door and attempt to talk to Plaintiff without results. The CAN positioned himself at the cell door with a chair. Plaintiff paced the cell for a while in handcuffs before he sack back on the bunk and fell asleep.

At approximately 5:00 a.m., three to four hours after Plaintiff fell asleep, he was awakened to the sound of the cell door opening, and Plaintiff saw several officers entering his cell. Plaintiff got out of the bed and stood at the rear of the cell, as Defendant Hicks entered followed by Defendant Rocha. Officers Frazier and Munoz stood at the cell door.

Hicks had an expandable baton fully extended in his right hand and an MK-9 pepper spray canister in his left hand, while he assumed a combative stance challenging Plaintiff to engaged in physical combat. Plaintiff remained standing at the rear of the cell without moving.

Rocha positioned himself in the cell behind the bunks in front of the toilet. Hicks then told Rocha, "spray his ass." Plaintiff was then sprayed with the pepper spray, while Hicks began striking Plaintiff with his baton. Hicks then grabbed Plaintiff's legs and dragged him off the bunk onto the

floor and out of the cell. Plaintiff was then kicked several times in the chest, abdomen and back, all while he was still in handcuffs.

Plaintiff was then ordered to lie on his stomach and someone stepped on his lower back as the waist chains and pad lock were placed around him. Plaintiff as then forced to stand and blindly walk with the walker. When Plaintiff felt the outside air, he overheard Hicks say "Code-1", then a minute later, he said "Code-1 is now Code-4."

Plaintiff was then taken to a holding cage after being decontaminated and required to stand for approximately two hours in pain and unable to breathe due to his glaucoma, asthma and arthritis.

Licensed Vocational Nurse (LVN) Teresiah Waiyaki went to the holding cage and asked Plaintiff if he had any injuries then turned and walked away.

After approximately two hours in the holding cage, Plaintiff was placed in a wheelchair, in restraints, and pushed by officers to the administrative segregation unit. After two hours of being in administrative segregation, a clinician informed Plaintiff she was removing him from suicide watch. Plaintiff was later informed he was being charged with battery on officer Hicks.

### C. Statement of Undisputed Facts

1. At all relevant times, Plaintiff Tracey B. Washington (T-81075) was a state prisoner in the lawful custody of California Department of Corrections and Rehabilitation (CDCR), and housed at Kern Valley State Prison (KVSP), in Delano California. (First Am. Compl. (FAC) at pp. 5-6, ECF No. 29.)

2. At all relevant times, Defendants Rocha worked as a correctional officer and Hicks worked as a correctional sergeant at KVSP. (FAC at p. 2.)

3. Between February 4, 2018, when the events in this lawsuit occurred, and April 26, 2018, when the complaint was filed, Washington submitted two grievances that were accepted for review at the first and second level: (1) KVSP-18-00387; and (2) KVSP-18-00478. (Lucas Decl. ¶¶ 5-6.)

4. During that same period, Washington also submitted four grievances that were accepted for review at the third level: (1) RJD-18-00630; (2) KVSP-18-00387; (3) RJD-17-05108; and (4) RJD-18-00368. (Voong Decl. ¶ 8.)

5. Washington's only grievance that concerned the incidents in this action was KVSP-18-00387. (Lucas Decl. ¶ 6; Voong Decl. ¶ 8, Ex. B.)

6. Grievance log number KVSP-18-00387 was completed at the third level of review on July 13, 2018. (Voong Decl. ¶ 8.)

### D. Defendants' Motion for Summary Judgment

Defendants argue that Plaintiff prematurely filed the complaint in this action before exhausting the administrative grievance review process.

It is undisputed that Plaintiff submitted administrative grievance log number KVSP-18-00387 relating to the events and claims at issue in this action. The factual allegations in this grievance mirror those presented in the operative first amended complaint. There, as here, Plaintiff alleged that staff used excessive force on him on January 6, 2018, by entering his cell, pepper sprayed him, dragged him out of the cell, and then began kicking and hitting him with their batons. The grievance was classified as a staff complaint, bypassed the first level of review, and was "partially granted" at the second level of review on March 13, 2018. Plaintiff then submitted this grievance to the third level of review which was received on April 18, 2018.

On April 26, 2018, Plaintiff filed the original complaint, which was self-dated by Plaintiff on April 22, 2018. (Compl. at p. 3, ECF No. 1.) However, it is undisputed that the third level did not complete its review of Plaintiff's grievance until more than two months later on July 11, 2018. (Voong Decl. ¶ 8.) An inmate must exhaust the available administrative remedies before he filed suit, even if the inmate fully exhausts while the suit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (same).

Defendants have meet their burden of proof in demonstrating that Plaintiff failed to properly exhaust the administrative remedies prior to filing suit, and there is no evidence before the Court that something in this case made the existing administrative remedies effectively unavailable to Plaintiff or that Plaintiff is excused from the exhaustion requirement. Albino v. Baca, 757 F.3d at 1172; Sapp v. Kimbrell, 623 F.3d at 823; Nunez v. Duncan, 591 F.3d at 1224-1226; Brown v. Valoff, 422 F.3d at 940. Accordingly, Defendants' motion for summary judgment should be granted and the instant action should be dismissed, without prejudice.

In his opposition, Plaintiff argues that he should be excused from having to exhaust to the third level of review because his grievance was partially granted at the second level of review. Plaintiff further argues that Defendants' motion is moot because he amended the complaint after his grievance was denied at the third level of review on July 13, 2018. Plaintiff's arguments do not have merit.

An inmate exhausts the administrative process when the prison officials purport to grant relief that resolves the issue in the grievance to the inmate's *satisfaction*. Harvey v. Jordan, 605 F.3d 681, 684-85 (9th Cir. 2010) (finding prisoner had exhausted where his inmate appeal received a "partial grant" of his first request—"An inmate has no obligation to appeal form a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies"). However, this Court must determine whether the entire relief was granted and whether the inmate has been "reliably informed by an administrator that no [further] remedies are available." Id. at 683-84 (citations and quotations omitted).

In Harvey, the plaintiff received a partial grant of his grievance at the first level of review which resolved the issue entirely. There, Harvey received a disciplinary charge but failed to provide him with a hearing within thirty days. Harvey, 605 F.3d at 684. After several months passed without the necessary hearing, Harvey filed a grievance complaining of the failure to provide the hearing. Id. at 684-85. Harvey's grievance was granted and "[t]he decision stated that he would be given a hearing and access to the videotape, and informed him that he could appeal within fifteen working days if he was 'not satisfied' with that resolution." Id. After Harvey did not receive a hearing, he filed a "reminder" grievance several months later requesting the hearing. Under these circumstances, the Ninth Circuit held that Harvey was not required to appeal further because the ruling on the grievance satisfied Harvey's request for the hearing with a videotape. Id. at 685.

Plaintiff's exhibits belie his claim that he was confused as to whether he was required to further appeal his grievance. The bottom of the second level response specifically states that the appeal inquiry was complete, that documents were reviewed, and that staff did not violate policy. (Pl. Opp'n at 10, ECF No. 41.) On the next page, it was specifically stated:

///

///

8

> If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

(Pl. Opp'n at 11.) This statement is consistent with the regulations governing the administrative grievance process. See Cal. Code Regs. tit. 15, § 3084.1(b) (unless otherwise stated, all appeals are subject to a third level of review before administrative remedies are deemed exhausted). This is not an instance where the administrative rules are so confusing that no prisoner could navigate them. Ross v. Blake, 136 S.Ct. at 1859 (one instance in which inmate may excused from exhaustion is if the "administrative scheme … [is] so opaque that it becomes, practically speaking, incapable of use …" and "no ordinary prisoner can discern or navigate it.") Here, both the grievance documents and the plain text of the regulations specifically required that Plaintiff resubmit his grievance to the third level of review before the administrative remedies were deemed exhausted.

To the extent Plaintiff contend that he was satisfied with the second level "partial grant," his own actions and words belie such claim. In appealing to the third level of review, Plaintiff specifically stated:

> *Not satisfied*. For all the reasons stated and based on federal law U.S. Constitution 1st, 8th, 14th and CDCR Title 15 and D.O.M. I wish to exhaust my administrative remedies and seek remedies in the U.S. Dist. Court. The 3 CAN's and custody staff that were present failed to protect me from being attacked by Hicks and Rocha.

(Pl. Opp'n 7.) (emphasis added). Plaintiff's appeal to the third level distinguishes this case from Harvey. Accordingly, given Plaintiff's failure to actually allege satisfaction with the second level response and the evidence demonstrating dissatisfaction, it cannot be determined that Plaintiff was excused from resubmitting his grievance to the third level review. Furthermore, while Plaintiff exhausted the administrative remedies through the third level of review, as explained herein, he did so after filing the instant action which is insufficient under the PLRA. McKinney v. Carey, 311 F.3d at 1199.

Lastly, with regard to Plaintiff's argument that Defendants' instant motion is moot because he has since amended complaint, it is without merit. Although Plaintiff's first amended complaint was filed after his claims were exhausted, an inmate satisfies the exhaustion requirement for new claims

9

added in an amended complaint as long as he exhausted his administrative remedies with respect to such new claims prior to filing the amended complaint. See Rhodes v. Robinson, 621 F.3d 1002, 1003 (9th Cir. 2010). In Cano v. Taylor, 739 F.3d 1214 (9th Cir. 2014), the Ninth Circuit added that new claims based on actions that took place before the original complaint was filed, were not barred under McKinney so long as plaintiff exhausted them prior to the filing of the amended complaint. Cano, 739 F.3d at 1220. However, the exceptions outlined in Rhodes and Cano are not present here. The events giving rise to the "new" claims must not have occurred until after the filing of the original complaint, but the underlying events must be related to the events alleged in the original complaint. Id. Here, the factual allegations underlying Plaintiff's excessive force and failure to intervene claims are based on precipitating events that took place before he filed this action. Such circumstances are not similar to the plaintiff in Cato who waited to raise his "new" claims until after the administrative remedies were exhausted. See also Vigil v. Valencia, No. 1:10-cv-01977-LJO-SAB, 2017 WL 3149636, at *4 (E.D. Cal. July 25, 2017) (the date the original complaint was filed determines when an action is commenced for purposes of exhaustion of the administrative remedies). Accordingly, Plaintiff's failure to exhaust until after the action was filed on April 26, 2018, warrants dismissal, without prejudice.[1]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The instant action be dismissed, without prejudice, for failure to exhaust the administrative remedies prior to filing suit.

///

---

[1] This case is also distinguishable from the circumstances in Jackson v. Fong, 870 F.3d 928, 934 (9th Cir. 2017), where the plaintiff also filed suit prior to exhausting his grievance through the final level of review. However, there, while waiting for a third level response, the plaintiff was released from custody and the court granted him leave to amend the complaint. Id. at 932. The Ninth Circuit held that, "[a] plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint is not subject to a PLRA exhaustion defense." Id. at 937. Here, Plaintiff remained in custody at the time he filed his amended complaint and currently remains in custody.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**January 28, 2019**__

UNITED STATES MAGISTRATE JUDGE